# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **WILLIE A. ESTES,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 5:09-CV-1043-VEH** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner,** | ) |
| **Social Security Administration,** | ) |
| | ) |
|     **Defendant.** | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff Willie A. Estes ("Ms. Estes") brings this action pursuant to 42 U.S.C. § 1614(a)(3)(4) of the Social Security Act.[2]  She seeks review of a final adverse

---

[1] The undersigned has rendered several other comparable decisions which address the inadequacies of the respective ALJ's RFC determinations from which the framework, analysis, and disposition of this case persuasively flow. *See, e.g., Mahaley v. Astrue*, No. 5:09-CV-0347-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 18, 2010) (reversing and remanding under similar circumstances in which the court found that the ALJ's RCF finding was not supported by substantial evidence); *Glover v. Astrue*, No. 3:09-CV-0033-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 4, 2010) (same); *Johnson v. Astrue*, No. 3:08-CV-1761-VEH, (Docs. 15, 16) (N.D. Ala. Mar. 12, 2010) (same); *Martin v. Astrue*, No. 5:09-CV-1029-VEH, (Docs. 11, 12) (N.D. Ala. Mar. 25, 2010) (same).

[2] This is Ms. Estes's second disability application. (Tr. 17).  Her first attempt resulted in an adverse decision by the Commissioner, which determination was then ultimately affirmed by the district court on appeal. (Tr. 17); *see also Estes v. Astrue*, No. 5:07-CV-1477-JFG, (Docs. 10, 11) (N.D. Ala. Mar. 11, 2008).

decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her application for Supplemental Social Security Income ("SSI").[3] Ms. Estes timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[4]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Estes was a 52-year-old female at the time of the hearing before the administrative law judge ("ALJ") held on July 25, 2008. (Tr. 148, 152). In terms of education, Ms. Estes completed the tenth grade. (Tr. 131, 152). She never obtained a GED or attended any vocational or trade school. (*Id.*). Ms. Estes's past work experiences include washing windows part-time with her mother in connection with a family-operated business and providing part-time personal assistance in a private home. (Tr. 131-32, 153-54).

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB") under the Social Security Act. However, separate, parallel statutes and regulations exist for SSI and DIB claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[4] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

Ms. Estes claims disabled status beginning on December 7, 2006.[5] (Tr. 150). She basis her SSI application upon the following conditions: impaired vision and hearing, including corneal scarring in the left eye, acid reflux, arthritis, and chronic obstructive pulmonary disease ("COPD"). (Tr. 74, 19).

Ms. Estes protectively filed an application for SSI on January 11, 2007. (Tr. 17, 53, 65). Her SSI claim was denied initially on June 7, 2006. (Tr. 26, 57-58). Ms. Estes then timely filed a request for a hearing on June 27, 2007. (Tr. 17).

A hearing was held before the ALJ on July 25, 2008. (Tr. 148). Subsequent to this hearing, the ALJ concluded Ms. Estes was not disabled as defined by the Social Security Act and denied her application on August 11, 2008. (Tr. 17-23). Ms. Estes subsequently filed a timely request for review with the Appeals Council (Tr. 12-13), and on April 15, 2009, it denied review, which resulted in the ALJ's ruling becoming the final decision of the Commissioner. (Tr. 3).

On May 27, 2009, Ms. Estes filed her complaint with this court asking for review of the ALJ's decision. (Doc. 1). This court has carefully considered the record, and for the reasons stated below, remands the Commissioner's denial of benefits for further evidentiary development and consideration.

---

[5] This onset date falls 1 day after the date on which another ALJ issued an unfavorable decision to Ms. Estes in connection with her first application. (Tr. 37).

## STANDARD OF REVIEW

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[6] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically

---

[6] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, as current through March 12, 2010.

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed

impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord*, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

### **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found Ms. Estes had not engaged in substantial gainful activity since the date of her application on January 11, 2007. (Tr. 19). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following severe combination of impairments: corneal scarring in the left eye, but normal correction in the right eye, and mild chronic obstructive pulmonary disease (COPD) due to long-term smoking habit[.]" (Tr. 28 (citation omitted)). Accordingly, the ALJ concluded that Ms. Estes satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

The ALJ further noted that Ms. Estes "did not allege any other impairments at the hearing" and that he found "no evidence of any auditory impairment during the hearing with the claimant able to respond to questions in a normal fashion without

having to have any questions repeated." (Tr. 19). Ms. Estes does not challenge any of the ALJ's step two findings.

At step three, the ALJ determined that Ms. Estes did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 30). Ms. Estes does not dispute this finding on appeal.

The ALJ then evaluated Ms. Estes's residual functional capacity ("RFC") at step four, and the claimant was found to have:

> [N]o special exertional limitations but with the following nonexertional limitations: blind or only finger counting in the left eye, but good vision in the right eye with best corrected vision of 20/25 to 20/40; no work around concentrated exposure to dust, fumes, and gasses; no work at unprotected heights or around dangerous, moving, unguarded machinery; no climbing of ladders, ropes, or scaffolding, and no work at jobs requiring bilateral binocular vision.

(Tr. 20; *see also* Tr. 22).

Because of the ALJ's finding that Ms. Estes had no past relevant work experience, it was necessary to continue to step five of the sequential analysis. (Tr. 22-23). Factoring in the Medical-Vocational Guidelines as a framework and relying upon testimony from the vocational expert, the ALJ concluded that Ms. Estes was capable of performing occupations such as a packager, laundry sorter, and garment bagger, which are all light exertional level jobs. (Tr. 22-23). Accordingly, the ALJ

concluded Ms. Estes was not disabled as defined by the Social Security Act, at any time from January 11, 2007,[7] through August 11, 2008, the date of the ALJ's decision, and denied her SSI claim. (Tr. 23).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[8]

In this appeal, Ms. Estes raises several issues, including the validity of the ALJ's RFC determination. (Doc. 9 at 4 ("In the instant case . . . a prior ALJ found an RFC exertionally for light work and the ALJ in the subsequent claim found no exertional limitations."); *id.* at 12 ("Remand for clarification of the visual limitations

---

[7] The ALJ notes earlier in his decision that SSI "is not payable prior to the month following the month in which the application was filed" (Tr. 17) and, on appeal, Ms. Estes does not dispute that January 11, 2007, is the appropriate starting point for measuring the duration of her SSI claim.

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

8

if necessary by a medical expert with expertise in ophthalmology and for his assistance in formulating a comprehensive RFC continues to be warranted.")). The court turns to the RFC issue first, and agrees with Ms. Estes that under the circumstances of her case, the ALJ committed reversible error.[9]

**I.     IN THE ABSENCE OF A SUPPORTIVE MEDICAL SOURCE STATEMENT OR A PHYSICAL CAPACITIES EVALUATION BY A PHYSICIAN, THE ALJ'S RFC DETERMINATION THAT MS. ESTES CAN PERFORM A REDUCED RANGE OF WORK WITHOUT ANY EXERTIONAL LIMITATIONS IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In support of his RFC determination, the ALJ states in part regarding the opinion evidence contained in the record:

> The claimant's allegations of inability to perform most activities due to extreme/bizarre vision problems are no supported by the evidence of record.  A consultative eye exam by Dr. Winston at the Eyecare Associates in May 2007, revealed best corrected vision of 20/25 in the right eye and 20/200 in the left eye.  He opined that binocular vision fluctuates due to intermittent suppression of the left eye.  <u>Depth perception is present but reduced</u> and color perception is normal.  He opined corneal scarring and further opined she should only <u>avoid tasks requiring fine acuity, depth perception, and balance, and should not drive</u> (Exhibit B2F).  Dr. Gulati also noted 20/25 visual activity in the right eye <u>with no vision in the left eye, but she was able to count fingers with the left eye</u> (Exhibit B4F).  She returned to Dr. Winston on April 16, 2008 when an eye exam continued to show good vision of the right eye (20/40) and light perception of the left (Exhibit B7F).  The residual functional capacity reflects limitations due to left eye blindness.

---

[9] As a result, the court does not reach the merits of the other issues raised on appeal.

(Tr. 21 (emphasis added)). The ALJ did not assign a particular weight to any of these medical findings.

The court has studied Exhibits B2F (*i.e.*, Dr. Winston's visual examination dated May 1, 2007), B4F (*i.e.*, Dr. Gulati's consultative examination dated May 25, 2007), and B7F (*i.e.*, Dr. Winston's visual examination dated April 16, 2008), which the ALJ referenced in determining Ms. Estes's RFC. In sum, none of these exhibits, whether considered separately, collectively, or in conjunction with other record evidence, provides substantial evidence in support of the ALJ's RFC determination that Ms. Estes is a capable of performing a reduced range of work <u>without any exertional limitations</u> given her severe impairments of corneal scarring in the left eye and COPD. Relatedly, the record lacks a medical source opinion[10] that indicates what level of exertional work Ms. Estes is capable of performing or delineates what vocational restrictions are appropriate given her severe impairments.

Two of the exhibits referenced by the ALJ relate exclusively to Ms. Estes's vision. Exhibit B2F is Dr. Winston's visual examination dated May 1, 2007. (Tr. 110-12). Exhibit B7F is a subsequent report of visual findings from Dr. Winston

---

[10] "Medical source statements are 'medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis.'" SSR 96-5p.

dated April 16, 2008. (Tr. 121). As a part of these examinations, Dr. Winston provided no medical source statement, physical capacities evaluation, or exertional assessment of Ms. Estes.

Similarly, while, in his initial report, Dr. Winston did suggest some work place precautions connected to Ms. Estes's impaired vision, such as avoiding "tasks requiring fine acuity, depth perception, balance" and advising Ms. Estes "not to drive" (Tr. 111), certainly none of the pulmonary restrictions placed on Ms. Estes by the ALJ due to COPD (Tr. 22) are substantiated by either set of medical records provided by Dr. Winston.

Instead, the records from Dr. Winston consist primarily of certain medical findings based upon his visual examinations of Ms. Estes, and none of this data is translated into any corresponding vocational assessment, *i.e.*, Ms. Estes's ability to lift, grip, carry, and stand <u>in light of her reduced acuity, depth perception, and balance attributable to her impaired vision</u>. *See, e.g.*, *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998) ("Where the 'medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make that connection himself.'") (citation omitted).

Therefore, Dr. Winston's medical records cannot provide substantial evidence in support of the ALJ's RFC determination applicable to Ms. Estes.

Dr. Gulati, a consultative examiner, provided a physical disability report relating to Ms. Estes dated May 25, 2007. (Tr. 114-16). While Dr. Gulati does share some clinical observations concerning his physical examination of Ms. Estes, nowhere did he provide a physical capacities assessment form pertaining to Ms. Estes or suggest specific non-exertional limitations that are appropriate for her in light of her severe combination of impairments.

In particular, the degree to which Dr. Gulati factored in Ms. Estes's severe impairment of COPD is unclear. (Tr. 116). Although he acknowledged the condition, he certainly did not propose any pulmonary limitations on Ms. Estes's employability which the ALJ found to be applicable due to her COPD.

Dr. Gulati did suggest an exertional level that Ms. Estes could meet given his physical assessment of her. More particularly, at the end of his report Dr. Gulati stated:

> This is a 51-year old white female who has a corneal ulcer present on the left cornea. She also has COPD. <u>I am unable to judge if she can do any gainful employment</u> but she does have good vision in the right eye. <u>She may not be able to do prolonged standing, lifting and carrying types of jobs but she can do sitting jobs without any difficulty</u>.

(Tr. 116 (emphasis added)). Accordingly, Dr. Gulati first expressly indicated that he cannot provide an opinion as to Ms. Estes's ability to be gainfully employed.[11]

However, despite this disclaimer, he then opined that, while Ms. Estes may not be able to do jobs that require "prolonged standing, lifting and carrying," she is capable of doing "sitting jobs without any difficulty." While Dr. Gulati did not explicitly use the term "sedentary" or "light" to describe the type of work that he believes Ms. Estes is capable of performing, his terminology seems to be more consistent with the definition of sedentary work as opposed to light work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. <u>Although a sedentary job is defined as one which involves sitting</u>, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> Light work involves lifting no more than 20 pounds at a time <u>with frequent lifting or carrying of objects weighing up to 10 pounds</u>. Even though the weight lifted may be very little, a job is in this category when it requires <u>a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls</u>. To be considered capable of performing a full or wide range of light work, <u>you must have the ability to do substantially all of these activities</u>. If someone can do light work, we determine that he or she can also do

---

[11] Dr. Gulati did not elaborate upon why he was unable to provide an opinion as to Ms. Estes's ability to "do any gainful employment[.]" (Tr. 116). However, the context of the complete sentence seems to imply that the nature of Ms. Estes's impaired vision, *i.e.*, blindness in the left eye and "good vision in the right eye[,]" prevented Dr. Gulati from doing so.

>   sedentary work, unless there are additional limiting factors such as loss
>   of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a), (b) (emphasis added). Therefore, at best, Dr. Gulati's report provides some support that Ms. Estes is capable of performing sedentary jobs based upon his physical examination of her. However, none of the specific jobs relied upon by the ALJ to satisfy the Commissioner's fifth-step burden falls into the sedentary range.

Moreover, Dr. Gulati's report is inconclusive about Ms. Estes's ability to perform light positions (which is the category covering the specific jobs that the ALJ found Ms. Estes to be capable of performing), and, regardless, nothing in Dr. Gulati's report comes close to supporting the ALJ's RFC finding that Ms. Estes can additionally perform the even more demanding categories of medium, heavy, and very heavy work. 20 C.F.R. § 404.1567(c), (d), (e).

Furthermore, having referred to Dr. Gulati's summary, but not having ever acknowledged (much less attempted to discount) his conflicting exertional assessment that Ms. Estes is capable of doing sedentary work but her ability to do light work is debatable, makes the ALJ's RFC determination of no exertional limits even less sound. Accordingly, Dr. Gulati's records similarly do not provide substantial evidence in support of the ALJ's RFC determination that Ms. Estes is capable of

performing work at any exertional level subject to certain non-exertional limitations, despite her combination of severe impairments of no vision in her left eye and COPD.[12]

Further, although not referenced by the ALJ in his decision, Dr. Whitney did complete a physical summary record (Exhibit B5F) on Ms. Estes dated May 31, 2007, and indicated "[n]o evidence of COPD" and "no other documented physical impairment with normal CE exam" other than "blindness in one eye[.]" (Tr. 117). However, this statement was provided by a <u>non-treating</u>, <u>non-examining source</u>, and there is no underlying physical capacities evaluation supporting Dr. Whitney's conclusions. Additionally, Dr. Whitney's finding of no COPD conflicts with the ALJ's severe combined impairment determination that includes this condition.

Finally, Dr. Whitney's summary does not address Ms. Estes's exertional capacity or suggest any vocational restrictions. Accordingly, Dr. Whitney's record does not provide substantial evidence in support of the ALJ's RFC determination that Ms. Estes is capable of performing work at any exertional level subject to certain non-exertional limitations.

Therefore, none of the exhibits cited by the ALJ provides substantial evidence

---

[12] Nowhere in his decision does the ALJ attempt to discount or discredit Dr. Gulati's summary despite its obvious inconsistency with his RFC finding that Ms. Estes has no exertional limitations.

to support the his RFC determination. Relatedly, the court does not see where the finding of no exertional impediments to employment or any of the job-related restrictions that the ALJ did place on Ms. Estes, *i.e.*, no work around concentrated exposure to dust, fumes, and gasses; no work at unprotected heights or around dangerous, moving, unguarded machinery; no climbing of ladders, ropes, or scaffolding; and no work at jobs requiring bilateral binocular vision are set forth in another underlying medical record. *See, e.g., Rohrberg*, 26 F. Supp. 2d at 311 (D. Mass. 1998) ("The ALJ failed to refer to-and this Court has not found-<u>a proper, medically determined RFC</u> in the record.") (emphasis added).

As another district judge of this court aptly explained the RFC issue in the context of an ALJ who determined that the claimant was able to perform her past relevant work without the benefit of a physical capacities evaluation conducted by a physician:

> While the Record contains Ms. Rogers['s] medical treatment history, <u>it lacks any physical capacities evaluation by a physician</u>. The ALJ made his residual functional capacity evaluation without the benefit of such evaluation. <u>An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person</u>. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996). <u>In most cases, including the case at bar, the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required</u>. *Id.* <u>In order to have developed a full, fair record as required under the law, the ALJ should have re-contacted</u>

> <u>Ms. Roger's [sic] physicians for physical capacities evaluations and/or sent her to physicians for examinations and physical capacities evaluations</u>. Further, Ms. Rogers'[s] ability to lift and to manipulate objects must be thoroughly evaluated by at least one physician. These evaluations shall be obtained upon remand. Ms. Rogers'[s] residual functional capacity was not properly determined nor supported by substantial evidence in this case.

*Rogers v. Barnhart*, No. 3:06-CV-0153-JFG, (Doc. 13 at 5) (N.D. Ala. Oct. 16, 2006) (emphasis added); *see also Manso-Pizarro*, 76 F.3d at 17 ("With a few exceptions (not relevant here), <u>an ALJ, as a lay person, is not qualified to interpret raw data in a medical record</u>.") (emphasis added) (citations omitted); *Rohrberg*, 26 F. Supp. 2d at 311 ("<u>An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings</u>, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.") (emphasis added) (citation omitted).

    In this instance, the ALJ has apparently based his RFC finding of no exertional limitations and certain non-exertional restrictions, including pulmonary, height, dangerous machinery, climbing, and bilateral binocular vision limitations from his interpretation of raw medical data. Comparable to *Rogers*, *Manso-Pizarro*, and other similar cases, a lay person, such as an ALJ, is not able to discern Ms. Estes's work-related functional abilities based upon the unfiltered information contained in her medical records. Therefore, the ALJ's having relied upon Dr. Gulati's summary, but

17

not having ever addressed his conflicting exertional assessment regarding Ms. Estes coupled with the absence of a competing medical source statement and/or any physical capacities evaluation conducted on her by a physician that substantiates the type of work-related restrictions *vel non* that the ALJ arrived at here, the record has not been adequately developed. *See, e.g., Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.") (citations omitted).

Relatedly, the ALJ's determination that Ms. Estes, despite being visually impaired from left eye blindness (Tr. 21) and suffering from COPD, can perform work at <u>any</u> exertional level (subject to certain non-exertional restrictions) is not supported by substantial evidence. Accordingly, the decision of the Commissioner is due to be reversed, and the case remanded for further proceedings consistent with this memorandum opinion.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is

not supported by substantial evidence. Accordingly, the decision of the Commissioner will be remanded by separate order.

    **DONE** and **ORDERED** this the 16th day of April, 2010.

 

                                          **VIRGINIA EMERSON HOPKINS**
                                          United States District Judge